## COMMONWEALTH *vs.* ANTONIO MATTOS.

Bristol.   December 7, 1988. — April 19, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Dismissal, Grand jury proceedings, Speedy trial. *Constitutional Law,* Assistance of counsel. *Joint Enterprise.*

Evidence presented to a grand jury was sufficient to establish the identity of a criminal defendant and probable cause to arrest him. [673-674]

There was no merit to the contentions of a criminal defendant that the judge should have dismissed the indictment for delay in the commencement of trial or that the judge erred in deciding the motion to dismiss after the defendant had been placed in jeopardy. [674-677]

At the trial of an indictment for murder, where the judge correctly concluded after a voir dire that statements the defendant made when questioned by the police were freely and voluntarily given after waiver of his Miranda rights, the defendant did not demonstrate that he was prejudiced by his counsel's failure to move to suppress the statements. [679-680]

Where the record of a murder trial did not support a conclusion that the defendant was under arrest or that he was not informed of his right to use a telephone, while at a police station where he made incriminating statements, he did not demonstrate prejudice from his trial counsel's failure to move to suppress the statements for violation of G. L. c. 276, § 33A. [680]

A criminal defendant did not establish that he was prejudiced by his trial counsel's failure to move to suppress evidence seized from another's apartment, where the defendant had no standing to challenge the search and seizure and where the defendant's statements in the affidavit supporting the search warrant were not obtained unlawfully. [680-681]

At a criminal trial the judge's instructions adequately explained the principle of joint venture to the jury. [681]

A defendant convicted of first degree murder was not prejudiced by the nolle prosequi of the indictment against an alleged joint venturer where there was not sufficient admissible evidence to convict that person. [681]

INDICTMENT found and returned in the Superior Court Department on August 29, 1983.

The case was tried before *William H. Carey,* J.

*William R. Hill, Jr.*, Committee for Public Counsel Services, for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney (*Dana A. Curhan*, Assistant District Attorney, with her) for the Commonwealth.

O'CONNOR, J. The defendant and Antonio Vieira were indicted for the murder in the first degree of Forrest O. Burris. After a jury trial, the defendant was convicted of that crime on June 5, 1985, and sentenced to life imprisonment. The Commonwealth nolle prossed the indictment against Vieira on June 25, 1987. On appeal, the defendant claims that the trial judge erred in denying his motion to dismiss the indictment due to insufficient evidence before the grand jury and in denying his motion to dismiss under Mass. R. Crim. P. 36 (b) (1) (c), 378 Mass. 909 (1979), based on delay in bringing him to trial. In addition, the defendant asserts that he was denied effective assistance of counsel in ways set forth below, and that this court should exercise its discretion under G. L. c. 278, § 33E (1986 ed.), to reverse his conviction on two grounds: (1) the judge's jury instruction on joint venture was inadequate, and (2) the prosecution allegedly relied on a joint venture theory involving the defendant and Vieira as joint venturers without proving Vieira's guilt. We affirm the conviction.

The defendant's first contention is that the evidence heard by the grand jury was insufficient to establish probable cause to arrest him and that, therefore, the judge erred in denying the defendant's motion to dismiss the indictment. We have held that, to justify an indictment, "at the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him." *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984), quoting *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). The grand jury heard evidence that the defendant had at times in the past gone to the victim's apartment and demanded money, that on one occasion at the apartment he had beaten the victim and that the victim feared the defendant. The grand jury heard evidence that the defendant and Vieira had gone to the victim's apartment on the night of the murder for the purpose of getting

the victim to give them money, and that the defendant and Vieira bought two bags of heroin the next morning for $60. Blood stains on the defendant's sneakers matched the victim's blood type, and hairs found in the victim's hands were consistent with both the defendant's and the victim's hair type. The defendant initially told the police he was wearing certain clothing on the night of the murder but later changed his story after the police confronted him with different clothing, taken from Vieira's house, that Vieira's mother had identified as having been worn by the defendant on the night in question. We are satisfied that that evidence was sufficient to meet the standard articulated in *Commonwealth* v. *O'Dell, supra*, and *Commonwealth* v. *McCarthy, supra*.

The defendant's next contention is that the judge should have dismissed the indictment because of the Commonwealth's delay in bringing him to trial in violation of Mass. R. Crim. P. 36 (b) (1) (c). The defendant was arrested on August 19, 1983, and remained under arrest until his arraignment on August 30. He was brought to trial one year and 266 days later on May 23, 1985.

Rule 36 (b), as it applies to this case, requires that a defendant shall be tried within twelve months after the "return day," and if the defendant is not tried within that period, as it may be extended by subdivision (b) (2) of the rule, the defendant "shall be entitled upon motion to a dismissal of the charges." Rule 36 (b) (1). " 'Return Day' means the day upon which a defendant is ordered by summons to first appear or, if under arrest, does first appear before a court to answer to the charges against him, whichever is earlier." Mass. R. Crim. P. 2 (b) (15), 378 Mass. 844 (1979). Since this defendant was under arrest, the date of his arraignment, August 30, 1983, was the return day, see *Barry* v. *Commonwealth*, 390 Mass. 285, 291 (1983), and he was entitled to be tried within twelve months of that date unless the Commonwealth established that further delay was justified. The burden of proof relative to justification is on the Commonwealth. *Commonwealth* v. *Campbell*, 401 Mass. 698, 702, 704 (1988). *Barry* v. *Commonwealth, supra* at 291, 294.

The commencement of trial after the expiration of the twelve-month period may be justified not only by the provision in rule 36 (b) (2) for "[e]xcluded [p]eriods," but also by the Commonwealth's demonstration that the defendant acquiesced in other periods of delay, or they benefited him or he was responsible for them. *Commonwealth* v. *Campbell*, *supra* at 702, citing *Commonwealth* v. *Farris*, 390 Mass. 300, 305 (1983), and *Barry* v. *Commonwealth*, *supra* at 295.

According to the docket entries, the defendant filed his rule 36 (b) motion on May 22, 1985. The motion first came to the judge's attention on May 23, the date scheduled for trial. Contrary to Mass. R. Crim. P. 13 (a) (2) and (4), no affidavit of the factual basis of the motion was attached, and the motion was not accompanied by a memorandum of law. The judge informed defense counsel that he would take the motion under advisement and that he would like "a brief and some proposed findings." Trial commenced that day, May 23, and continued until June 5. On June 4, the defendant filed a document entitled, "Suggested Findings on Defendant's Motion to Dismiss," requesting the judge to "find" that the defendant had not been brought to trial within twelve months after the return day "as required by Mass. R. Crim. P. 36 (b) (1)," that the Commonwealth had produced nothing justifying the delay, that the delay was unjustified and that the motion to dismiss be allowed. Also, on June 4, First Assistant District Attorney Raymond P. Veary, Jr., who, according to the docket, alone represented the Commonwealth throughout the proceedings in the trial court, filed a memorandum in the Commonwealth's behalf in opposition to the motion to dismiss. That memorandum set forth detailed information concerning the procedural history of the case, focusing especially on the fact that the defendant had sought, agreed to, or benefited by various identified continuances.

On June 5, after the evidence had closed and before closing jury arguments, the judge, declining to rule on the motion to dismiss, said that he was still waiting for a brief from the defendant, that he was not going to delay sending the case to the jury, and that he would hold the motion under advisement

until he received a brief and heard arguments. On June 6, after verdict and sentencing, the judge denied the motion to dismiss without hearing. He concluded that the "excluded periods . . . far exceed[ed] the 266 days between the end of the twelve-month period and the commencement of the trial." It is clear that the judge relied almost entirely on the information supplied by the prosecutor's memorandum opposing the dismissal motion.

The defendant did not claim in the trial court and does not claim on appeal that the factual assertions in the prosecutor's memorandum relative to the defendant's requests for or agreements to continuances are untrue. He does not suggest that he now has or ever did have any evidence to controvert those assertions. Rather, the thrust of the defendant's argument is that there are "crucial disparities" between the docket entries and clerk's notes and minutes, on the one hand, and the prosecutor's unsworn memorandum, on the other. In the circumstances, he says, had he been permitted to argue his motion before the judge in keeping with the judge's promise, he could have successfully argued that the prosecutor's memorandum cannot enhance the docket entries and clerk's notes and minutes, and that those entries and notes and minutes are not enough to sustain the Commonwealth's burden to prove that the 266 days in excess of a one-year delay was justified.

We begin with the proposition that, because the defendant's motion was not accompanied by an affidavit bearing on the critical facts at issue and a memorandum of law as required by Mass. R. Crim. P. 13 (a) (2) and (4), the defendant was not entitled to be heard on the motion. Furthermore, the argument that the defendant now makes, and presumably would have presented to the trial judge, lacks merit. It is true that, in many instances, the docket entries and clerk's notes and minutes are silent with respect to whether the defendant acquiesced in various continuances or benefited from them, and therefore, standing alone, they do not carry the Commonwealth's burden to establish justification for the delay. However, the prosecutor's memorandum, which in no way contradicts the docket entries and clerk's notes, supplements them

with information relative to agreements concerning continuances. We have said that "the docket and minutes of the clerk are prima facie evidence of the facts recorded therein," *Barry* v. *Commonwealth*, 390 Mass. 285, 289 (1983), but we have never suggested that they may not be supplemented, or even rebutted, by other evidence. The judge was entitled to credit the prosecutor's uncontradicted representations and to conclude therefrom that the Commonwealth had proved that the trial delay beyond twelve months was justified.

The defendant also argues that it was reversible error for the judge to fail to decide the motion to dismiss before the defendant was placed in jeopardy. He points to Mass. R. Crim. P. 15, 378 Mass. 882 (1979), entitled "Interlocutory Appeal," and especially to section (c) which provides: "Any motion the determination of which may be appealed pursuant to this rule shall be decided by the judge before the defendant is placed in jeopardy under established rules of law." The short answer to this contention is that, although the *allowance* of a motion to dismiss may be the subject of an interlocutory appeal by the Commonwealth, the *denial* of such a motion is not appealable under rule 15 and therefore need not be decided before the defendant is placed in jeopardy.

The defendant next contends that he received ineffective assistance of counsel (appellate counsel was not trial counsel), in violation of his Federal and State constitutional rights because his trial counsel failed to file motions to suppress evidence including evidence of statements that allegedly were obtained illegally. Under the Sixth Amendment to the United States Constitution, a convicted defendant must show both that "counsel's representation fell below an objective standard of reasonableness" and that the defendant was prejudiced by the deficient performance. *Strickland* v. *Washington*, 466 U.S. 668, 688, 692 (1984). Under art. 12 of the Declaration of Rights of the Massachusetts Constitution, we have required an "appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer

— and, if that is found, then typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

As background for our discussion of the defendant's ineffective assistance of counsel argument, we set out facts that the trial jury could have found that bear on the challenged statements and the seizure of challenged evidence: Burris's body was discovered on the living room floor of his New Bedford apartment on the morning of August 12, 1983. A knife protruded from his chest and an electrical cord was twisted around his neck. Blood covered his shirt, neck, and face, and stained the surrounding carpet. The apartment was in disarray. The State pathologist conducted a post-mortem examination of the victim and concluded that the victim had died of multiple stab wounds to the chest.

In the course of their investigation into the slaying, the attention of Sergeant John Dextradeur and Detective Michael Wood of the New Bedford police department was drawn to the defendant. At 11 P.M. on August 12, 1983, they located the defendant at the New Bedford home of Antonio Vieira. The defendant and Vieira agreed to go to police headquarters for an interview. After arriving at police headquarters, the defendant was given a "Department Issue" Miranda warning form. The defendant read the form, stated in response to a question that he understood it, and signed it.

In response to questioning, the defendant told the police that he had been in the victim's apartment on August 4, 1983, and subsequently returned on August 6, 1983, to clean the carpets in the apartment, for which he received $20. The defendant then described his activities on the evening of August 11, 1983. He stated that, at approximately 4:15 P.M., he had gone to his mother's house in Fairhaven in order to wash and change his clothes. He was accompanied by Antonio Vieira. He said that the clothes he was wearing at the time of the interview were the clothes he had changed into at his mother's house. After forty-five minutes at his mother's house, he and Vieira obtained

a ride to Route 6 in Fairhaven. After visiting various locations there, the defendant and Vieira hitchhiked to the victim's apartment in New Bedford. They arrived there at approximately 6 P.M. The defendant stated that his purpose in going to the defendant's apartment was to see if the victim would hire him to wash the woodwork in his apartment. The defendant and Vieira rang the doorbell of the victim's apartment for approximately five minutes and received no response. They then left and travelled to Costas Lunch at Bailey's Square. They "hung around" that area for a period of time, but saw no one that they knew. From there, he stated, they proceeded to the Vieira home where they arrived at 9:30 P.M. and remained until 9:30 A.M. on August 12.

The police interviewed the defendant until approximately 1:30 A.M. on August 13, 1983. Following the interview, Sergeant Dextradeur obtained a warrant to search Vieira's home. Pursuant to the warrant, the police seized several articles of clothing and footwear. Some of these items, including the laces in the sneakers, were stained with blood that later was determined to be of human origin.

The defendant contends that he was prejudiced by his counsel's unreasonable failure to make a motion to suppress statements made by the defendant when he was questioned by the police on the night of August 12 to 13, 1983. Although defense counsel did not file a pretrial motion to suppress, the record makes clear that defense counsel orally moved during trial for a voir dire on the admissibility of the defendant's statements. He stated that, if the court did not rule the statements inadmissible on evidentiary grounds, "I believe the Court has to hold a hearing or a voir dire of the voluntariness of this statement which the defendant might have made to the police officer and [I] file a motion at this time." The court held a voir dire, and concluded that the statements had been made voluntarily. Such a conclusion, to be proper, must be based on evidence both that the requirements of *Miranda* v. *Arizona*, 384 U.S. 436 (1966), have been met and that the statement was "freely and voluntarily given." *Commonwealth* v. *Tavares*, 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982), quoting *Coyote* v.

*United States*, 380 F.2d 305, 309-310 (10th Cir.), cert. denied, 389 U.S. 992 (1967). In this case, the judge's conclusion is supported by the uncontradicted testimony of Sergeant Dextradeur at voir dire that the defendant voluntarily accompanied police to headquarters, that while there the defendant read and signed a form advising him of his Miranda rights, that Sergeant Dextradeur asked the defendant if he understood his rights, and he responded affirmatively, that the defendant did not follow up on Sergeant Dextradeur's offer to explain the form to the defendant, that the defendant voluntarily signed the waiver of his Miranda rights, and that he was cooperative and appeared coherent throughout his questioning by police. See *Commonwealth* v. *Day*, 387 Mass. 915, 919-920 (1983).

The defendant also argues that his counsel should have moved to suppress his statements on the ground that he was not informed of his right to use the telephone as guaranteed by G. L. c. 276, § 33A. Section 33A requires that an "arrested person" be informed of his right to use a telephone. However, the defendant has failed to establish the facts on which his argument is predicated, namely that he was under arrest at the police station or that he was not informed of his right to use a telephone. It is not the role of this court to decide such questions of fact. In any event, there is no evidence in the record that would support a conclusion that the defendant was under arrest during questioning on the night of August 12 and 13. On the contrary, there is considerable record evidence that he was not under arrest at that time.

The defendant also contends that his counsel should have moved to suppress the evidence seized from Vieira's house on the morning of August 13. He argues that the statements obtained by the police at the station on the night of August 12 and 13 were essential to the affidavit supporting the search warrant. Since those statements were obtained unlawfully, he argues, the search was unlawful too. The defendant's argument fails for two reasons: Because the defendant did not live in the Vieira apartment and was not present at the time of the search, he has no standing to challenge the search and seizure. *Commonwealth* v. *Mora*, 402 Mass. 262, 265 (1988). Moreover,

since the questioning of the defendant was lawful, the warrant affidavit was not tainted by the use of statements made during that interrogation. We conclude that the defendant was not prejudiced by the failure of his counsel to move to suppress the statements he made to the police or the evidence seized from the Vieira home, and thus ineffective assistance of counsel in that regard has not been established.

The defendant urges us to exercise our extraordinary power under G. L. c. 278, § 33E, to reverse his conviction because the case was tried by the Commonwealth on a theory that the defendant engaged in a joint venture with Vieira, but the judge did not instruct the jury that the Commonwealth had the burden to prove Vieira's guilt of murder in the first degree beyond a reasonable doubt. The judge was not required to give that instruction. The judge's instruction adequately explained joint venture to the jury, emphasizing the necessity of the defendant's active participation and sharing with the coventurer the state of mind required for murder in the first degree.

Lastly, the defendant contends that justice requires the reversal of his conviction because, on June 25, 1987, the Commonwealth nolle prossed the murder indictment against Vieira on the ground that it had insufficient evidence to convict him. There was no injustice to the defendant. The Commonwealth did have sufficient evidence to convict the defendant. In any event, as the Commonwealth explains in its brief, the defendant's out-of-court statements implicating both Vieira and himself were admissible against the defendant. They would not have been admissible against Vieira.

We have reviewed the whole case. We conclude that there is no basis for relief under G. L. c. 278, § 33E.

*Judgment affirmed.*