## Commonwealth *vs.* Milton Rodgers.[1]

Suffolk. November 7, 2006. - March 16, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.[2]

*Practice, Criminal,* Speedy trial.

The judge in a criminal action properly denied the defendant's motion to dismiss for failure to grant him a speedy trial, where the defendant agreed to an extension of time for the filing of pretrial motions [541], and also acquiesced in repeated continuances with respect to the Commonwealth's motion to obtain the defendant's blood sample for testing [541-543]; however, the judge should not have excluded from the speedy trial calculation the period of continuances to which the defendant's counsel agreed after the defendant filed, pro se, a motion to dismiss counsel, where the filing of that motion temporarily suspended counsel's authority to bind the defendant to any agreed continuances, and it could not be said that the defendant benefited from the delay during that period [543-547].

Indictment found and returned in the Superior Court Department on October 31, 2000.

A motion to dismiss was heard by *Raymond J. Brassard,* J., and the case was tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Barbara J. Sweeney* for the defendant.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

Sosman, J. The defendant appeals from his conviction of violation of an abuse prevention order, claiming that his motion to dismiss for failure to grant him a speedy trial in accordance with Mass. R. Crim. P. 36 (b), as amended, 422 Mass. 1503 (1996), should have been allowed. In an unpublished memoran-

---

[1]As is our custom, we spell the defendant's name as it appears on the indictment.

[2]Justice Sosman participated in the deliberation on this case and authored this opinion prior to her death.

dum of decision pursuant to its rule 1:28, the Appeals Court affirmed the conviction, concluding that the Commonwealth had met its burden of justifying the delay. We granted the defendant's application for further appellate review. While we agree that the Commonwealth met its burden of justifying the delay, we do so on grounds other than those enunciated by the judge. We therefore affirm the conviction.

1. *Background.* The defendant was indicted on two indictments charging rape, one as a second offense, two indictments charging indecent assault and battery, one indictment charging violation of an abuse prevention order, and two indictments charging him with being a habitual criminal. The victim, who had previously dated the defendant, obtained a protective order against him in 1999. The indictments arose out of an incident in June, 2000, when the defendant allegedly came to the victim's home and sexually assaulted her. She later became pregnant and suffered a miscarriage. In preparation for trial, first the Commonwealth and then the defendant pursued deoxyribonucleic acid (DNA) testing of the fetal remains in an attempt to determine paternity.

The defendant was arraigned on November 1, 2000. He was indigent, and counsel was appointed. On March 25, 2003, the defendant moved to dismiss pursuant to rule 36 (b). After an evidentiary hearing, the judge denied the motion on May 30, 2003. Trial was held from June 24 through July 1, 2003. After several of the charges were dismissed on the Commonwealth's motion, the jury acquitted the defendant of the remaining rape and indecent assault and battery charges, and convicted him on the charge of violation of an abuse prevention order. Specific facts pertaining to the defendant's speedy trial claim will be addressed in the course of the discussion of which periods should have been included in or excluded from the calculation under rule 36.

2. *Discussion.* Under rule 36 (b) (1) (C), a defendant "shall be tried within twelve months after the return day in the court in which the case is awaiting trial." If trial is not held within the time limits set forth, a defendant is entitled to dismissal of the charges. Mass. R. Crim. P. 36 (b) (1) (D). However, charges are not to be dismissed if the delay comes within one of the

"[e]xcluded [p]eriods" set forth in rule 36 (b) (2), or if the defendant "acquiesced in, was responsible for, or benefited from the delay." *Commonwealth* v. *Spaulding*, 411 Mass. 503, 504 (1992). For these purposes, "[a] failure to object to a continuance or other delay constitutes acquiescence." *Commonwealth* v. *Tanner*, 417 Mass. 1, 3 (1994). See *Commonwealth* v. *Lauria*, 411 Mass. 63, 68 (1991); *Commonwealth* v. *Dias*, 405 Mass. 131, 139 (1989). The burden is on the Commonwealth to demonstrate that a particular period or periods should be excluded from the calculation. *Commonwealth* v. *Spaulding*, *supra*. *Commonwealth* v. *Mattos*, 404 Mass. 672, 674 (1989). *Barry* v. *Commonwealth*, 390 Mass. 285, 292 (1983).[3] The docket and the clerk's minutes are prima facie evidence of the facts recorded therein, *id.* at 289, but the parties may supplement or rebut the docket or clerk's minutes by presenting other evidence, *Commonwealth* v. *Mattos*, *supra* at 677. See *Commonwealth* v. *Fling*, 67 Mass. App. Ct. 232, 237 (2006). On appeal, we are normally "in as good a position as the judge below to decide whether the time limits imposed by the rule have run," but where there has been an evidentiary hearing on the motion, we accord the normal deference to the judge's assessment of credibility. *Barry* v. *Commonwealth*, *supra*.

Here, 875 days elapsed between the defendant's arraignment on November 1, 2000, and the date his rule 36 (b) motion was filed on March 25, 2003.[4] Thus, in order to fit within the time periods prescribed by the rule, the Commonwealth had to justify 510 days of delay. The defendant does not contest that 441 days were properly excluded, and we therefore do not need to address the rulings that led to exclusion of those periods. As a

[3]By comparison, when a defendant argues that his constitutional right to a speedy trial has been denied, the burden is on him to show prejudicial delay. *Commonwealth* v. *Look*, 379 Mass. 893, 898, cert. denied, 449 U.S. 827 (1980), and cases cited. A claim under Mass. R. Crim. P. 36, as amended, 422 Mass. 1503 (1996), however, "is wholly separate from" a constitutional claim. *Commonwealth* v. *Lauria*, 411 Mass. 63, 67 (1991). Here, the defendant has not argued that he was denied the right to a speedy trial under the Federal or State Constitution.

[4]The filing of a motion pursuant to rule 36 tolls the running of the rule 36 time limits. *Commonwealth* v. *Spaulding*, 411 Mass. 503, 505 n.4 (1992), citing *Barry* v. *Commonwealth*, 390 Mass. 285, 294 (1983).

result, the Commonwealth must justify at least an additional sixty-nine days of delay in order to defeat the defendant's motion. Three periods of time are contested by the parties. The judge excluded 123 of those contested days, thereby ruling that the Commonwealth had succeeded in justifying the delay. The defendant argues that the judge erroneously excluded those 123 days from the calculation; the Commonwealth contends that the judge erroneously included a total of 257 days in the calculation. We consider each contested period separately below.

a. *Time between the filing of the pretrial conference report and the filing of pretrial motions.* The time period between the arraignment date up through seven days beyond the filing of the pretrial conference report is ordinarily included in the calculation of elapsed days. *Barry* v. *Commonwealth, supra* at 296 n.13, 298. *Commonwealth* v. *Sigman*, 41 Mass. App. Ct. 574, 575-576 (1996). Here, in their pretrial conference report, filed on December 4, 2000, the parties granted each other additional time for the filing of pretrial motions, agreeing to December 29, 2000, as the due date for the filing of those motions. Those additional days of extension, agreed to by the defendant, are to be excluded from the calculation. *Commonwealth* v. *Amidon*, 428 Mass. 1005, 1006 (1998). *Barry* v. *Commonwealth, supra. Commonwealth* v. *Sigman, supra* at 576. *Commonwealth* v. *Corbin*, 25 Mass. App. Ct. 977, 979 (1988). The judge, however, included in the calculation the entire time between arraignment and December 29, 2000, instead of excluding the time from seven days beyond the pretrial conference report (December 11) through the agreed extension date. This was error. Where the defendant agreed to a date more than seven days beyond the filing of the pretrial conference report, he acquiesced in that delay, and an additional eighteen days should have been excluded from the computation.[5]

b. *Continuances for purposes of the Commonwealth's forensic testing.* As indicated above, one of the important avenues of investigation in the case was DNA testing of the fetal remains in order to establish or rule out the defendant as the father of the miscarried fetus. Initially, the Commonwealth indicated that

---

[5]When a period is excluded, the computation "shall include both the first and the last day of the excludable act or event." Mass. R. Crim. P. 36 (b) (3).

it would do the testing, and the time period from January 8, 2001, through September 5, 2001, includes repeated continuances by agreement with respect to the Commonwealth's motion to obtain the defendant's blood sample and status reports on the progress of the Commonwealth's testing. At the end of that period, however, the Commonwealth had not completed any testing. Thereafter, the defense took over the task of trying to have DNA testing performed.

The docket and the clerk's notes reflect defense counsel's agreement to each of the continuances throughout this period. As such, the Commonwealth presented prima facie evidence of the defendant's agreement to this entire period of delay. *Barry* v. *Commonwealth, supra* at 289. It therefore became incumbent on the defendant to refute that prima facie evidence. He did not, but the judge nevertheless included this time period as "chargeable to the Commonwealth." The judge did not explain his reasons for doing so, and we can only assume that he included this period in the calculation because the Commonwealth did not in fact conduct testing.[6] That does not change the fact that, at each of the Commonwealth's requested postponements of status conferences on the subject, the defendant agreed to postponements to specific future dates. See *Commonwealth* v. *Fleenor*, 39 Mass. App. Ct. 25, 27 & n.3 (1995) (agreement to specific periods of delay distinguishable from failure to object to unlimited period of delay). There is no evidence to suggest that the Commonwealth misled the defense as to the progress (or lack thereof) in testing,[7] and the defendant was always free to insist that a scheduled status conference go forward so that the delay in testing could be explained to the judge. For whatever reason (perhaps in the hope that testing would exclude the defendant as the father of the fetus), the defendant agreed to

[6]The record is unclear as to why testing was not completed during this time, containing only a vague reference to "a problem with logistics." We note, however, that defense counsel also encountered difficulties when the defense undertook to perform this testing, and that the defense was not able to obtain conclusive test results over a comparable period of time.

[7]Cf. *Commonwealth* v. *Campbell*, 401 Mass. 698, 703-704 (1988) (defendant's acquiescence in delay not effective when she relied on Commonwealth's subsequently withdrawn promise not to try her and to allow her to plead guilty to lesser offense after codefendant's trial).

a series of scheduled postponements that, in total, amounted to a protracted delay. The issue before us is whether there was such agreement or acquiescence, not whether the delay itself was reasonable. The 239 days of delay encompassed by this period should have been excluded from the calculation of elapsed time.

c. *Continuances agreed to by defense counsel while the defendant's motion for new counsel was pending.* Although the above excluded periods are, by themselves, more than sufficient to satisfy the Commonwealth's burden, we consider the final contested period, as the exclusion of that period was critical to the judge's conclusion that that burden had been satisfied. We agree with the defendant that most of that period should have been included in, not excluded from, the calculation.

The defense was pursuing DNA testing (without results) during the winter and spring of 2002. By sometime that spring, the defendant informed counsel that he wanted to go to trial, and that he did not wish to continue the case further to pursue DNA testing. On May 21, 2002, the defendant filed a pro se motion to dismiss due to alleged prejudicial delay. The defendant acknowledges that, while he was still represented by counsel, the court was entitled to ignore such pro se filings. See *Commonwealth* v. *Molino*, 411 Mass. 149, 152-153 (1991); *Commonwealth* v. *Tuitt*, 393 Mass. 801, 807 (1985). Despite his client's request that counsel not agree to any further continuances, defense counsel nevertheless agreed to continue the case from June 12 until June 25, 2002, for a status conference with respect to the progress of DNA testing. Again, as defense counsel was still counsel of record, with the defendant's having expressed no dissatisfaction to the court, the judge was entitled to rely on counsel's representations on behalf of the defendant. See *Commonwealth* v. *McCants*, 20 Mass. App. Ct. 294, 299-301 (1985), *S.C.*, 25 Mass. App. Ct. 735 (1988). "Inherent in the adversary system is the imperative that choices made by counsel are binding on the defendant." *Commonwealth* v. *Amirault*, 424 Mass. 618, 645 n.19 (1997). See *Amado* v. *Commonwealth*, 349 Mass. 716, 722 (1965). As such, the period from June 12 through June 25, 2002, is properly excluded from the calculation.

However, during that same period, the defendant filed a motion to dismiss appointed counsel and to appoint new counsel, indicating, inter alia, that there was a disagreement on strategy,[8] a lack of understanding between client and counsel, a breakdown in communications, and "no trust at all left."[9] A motion to dismiss counsel is sufficient indication of the defendant's dissatisfaction that he should not thereafter be bound by counsel's representations, pending resolution of the motion. *Commonwealth* v. *McCants, supra* at 300 (moving to dismiss counsel "is one way for a defendant to indicate to the court that the attorney does not speak for him"). See *Commonwealth* v. *Amado, supra* (judge may rely on defense counsel's representations "in the absence of notice or objection to the judge from the defendant himself"). Here, the defendant's motion was inexplicably neither docketed, see *Callahan* v. *Commonwealth,* 416 Mass. 1010, 1010 (1994) (absent contrary order from judge, clerk's "duty is the acceptance and filing of papers pertaining to litigation"), nor heard, see *Commonwealth* v. *Moran,* 388 Mass. 655, 659 (1983) ("judge must permit a defendant to advance his reasons for wanting to discharge his attorney" by "hear[ing] the defendant's offer of specifications"), and was ignored throughout the summer of 2002. During the summer, counsel again agreed to a series of continuances. The judge reasoned that, while the pendency of the defendant's motion to dismiss counsel was "troublesome," the defendant should still be bound by counsel's agreement to the delay because the defendant ostensibly did nothing to pursue his motion.

We agree with the defendant that the filing of the motion to dismiss counsel by itself temporarily suspended counsel's authority to bind the defendant to any agreed continuances. The motion was on a preprinted typed form, perfectly legible, and

---

[8] As elucidated at the hearing, counsel was of the view that, notwithstanding the difficulties and delays, the defense should pursue additional avenues of DNA testing. The defendant was adamant that he wanted an immediate trial and did not wish to delay trial in the hope of obtaining favorable test results.

[9] The motion was dated June 12, 2002, and it was received by the clerk's office. However, the precise date it was received is not known, as the document was neither date stamped on receipt nor docketed. As it was dated June 12 and mailed to the clerk's office, it could not have been received prior to counsel's June 12 agreement to a June 25 status date.

sent to the clerk's office with a proper certificate of service. We see no justification on this record for the clerk's failure to docket the motion or to bring it to the judge's attention. While other types of pro se motions by defendants who are represented by counsel ordinarily do not require judicial action, a motion to dismiss counsel does.

Moreover, the defendant did attempt to get his motion to dismiss counsel before the court. On June 28, 2002, the defendant wrote to the clerk's office, in a legible one-page handwritten letter, advising that he had seen an apparently recent docket sheet that did not reflect his "motion for new attorney."[10] Thus, the defendant brought to the clerk's attention that something was amiss with respect to the ordinary filing, docketing, and processing of his motion for new counsel. Apparently hearing nothing in response, the defendant filed a petition for writ of habeas corpus on July 16, 2002. His first reason for seeking the writ, legibly filled in on a preprinted typed form, was "to remove counsel and appointment of new counsel because Jan 9, 2002, my attorney advise me of 15 day continuous [*sic*] I agree too [*sic*]. Now it's 6 month [*sic*] later. I don't need help like this from him."[11] This petition again brought to the clerk's attention the fact that the defendant was seeking to discharge counsel and have new counsel appointed, and expressly linked that desire to counsel's unauthorized agreement to further continuances. The next day, July 17, the court entered an order that the defendant's pro se filings (which had included other motions as well) be placed in a separate file and not docketed, effectively eliminating the defendant's ability to communicate his wishes to the court.

---

[10]In its entirety, the defendant's letter read as follows:

> "Enclosed please find for immediate filing and hearing on this 'motion for Notice of Bad Acts Evidence[']; And also regarding my motion for new attorney I did not see it file [*sic*] on my docket sheet. And, I am going to mail other motion's [*sic*] I need you to file them also for me. And I ask over and over again for no more continuance [*sic*] which should have been on file on my docket sheet on behalf of defendant. Please could you please file every-thing that I send you.

> "Thank you for your prompt attention to this matter."

[11]His second reason again protested the delay in trial, claiming that he had already lost one witness and that he did not want to lose any more.

Given that the defendant was in custody throughout this period, it is not clear what else the defendant could have done, other than correspond with the clerk by letter and motion, to try to advance his motion for new counsel.[12] The only remaining avenue, not pursued by the defendant at that time, was to ask counsel to withdraw. However, the defendant's principal dissatisfaction with counsel stemmed from counsel's failure to abide by the defendant's express instruction that counsel not agree to any more continuances. Where there has been such a breakdown in the relation between the defendant and his counsel, it is unrealistic to insist that the defendant nevertheless rely on counsel to communicate his wishes to the court. We agree with the defendant that he should not be bound by his counsel's agreement to continuances in the wake of his motion for new counsel and correspondence relating thereto. Counsel's agreement to continuances during the summer of 2002 (covering the period June 25 through August 28) did not bind the defendant, as he did not acquiesce in that delay.[13]

We recognize that the filing of pro se motions by represented defendants can present clerks with a difficult predicament. On the one hand, the represented defendant is not entitled to have such motions entertained, yet such motions may be the only way that a defendant can signal his dissatisfaction with counsel.

---

[12]Ordinarily, the time taken to hear and rule on a defendant's motion for new counsel is excluded from the rule 36 (b) calculation because the defendant has filed the motion and resolution of such issues is considered a benefit to the defendant. See *Commonwealth* v. *Fling*, 67 Mass. App. Ct. 232, 235 (2006); *Commonwealth* v. *Wysocki*, 28 Mass. App. Ct. 45, 49 (1989); *Commonwealth* v. *Judd*, 25 Mass. App. Ct. 921, 923 (1987). Here, however, nothing was being done to process the defendant's motion, as it had not even been docketed.

[13]The Commonwealth suggests that, because the defendant did not raise his motion for new counsel when he was brought into court on September 9, 2002, he had effectively abandoned the motion. However, the judge found that defense counsel had objected to a continuance on August 28, 2002. Thus, as of September 9, the defendant's disagreement over counsel's acquiescence in such continuances was at least temporarily resolved. See *Commonwealth* v. *Murphy*, 55 Mass. App. Ct. 332, 334 (2002). On September 9, the defense filed a discovery motion, which did result in the exclusion of a time period thereafter. That does not suggest, however, that the defendant no longer wanted a prompt trial. To the contrary, the following month, the defendant complained to the Board of Bar Overseers about his counsel, which led to counsel filing a motion to withdraw.

Where, however, the defendant submits a clearly titled and articulated motion to discharge counsel, such a motion must be docketed and processed in the usual course. Until that motion is resolved, it cannot be automatically assumed that counsel speaks for the defendant.

Nor can it be said that the defendant benefited from the delay during the summer of 2002. There is nothing in the record to suggest that there was any further progress on DNA testing during this time, and the defense never did obtain conclusive DNA results. While benefit to a defendant can justify delay where the record does not indicate express agreement to or acquiescence in a particular period of delay, we are unaware of any case where, notwithstanding the defendant's express objection to further delay (clearly asserted by this defendant while he sought new counsel), we have excluded the time period because of "benefit" to the defendant. Cf. *Commonwealth* v. *Lauria*, 411 Mass. 63, 71 (1991) (during period when defendants made no objection to delay, they benefited by locating missing defense witness); *Commonwealth* v. *Vasquez*, 55 Mass. App. Ct. 523, 527 (2002) (defendant made no objection to agency's delay in production of records, and benefited from additional investigation during that delay). Hindsight claims that a defendant benefited from delay should not override his express statement that he does not agree to such delay. The decision whether to go to trial or to pursue some further investigation or discovery is a strategic one that the defense is entitled to make. When rule 36 rights are being expressly asserted, we will not second-guess the defendant's strategic choice and conclude that he was really better off for having endured the objected-to delay.

*Judgment affirmed.*