MAX R. KARGMAN & another[1] vs. COMMISSIONER OF
REVENUE.

Suffolk.  April 4, 1983. — August 1, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Taxation,* Income tax.  *Statute,* Construction.

Taxpayers whose "Part B adjusted gross income" for the years 1974 and
    1975 was a loss were not entitled to offset the loss against their "Part A
    adjusted gross income" for those years in determining the amount of
    personal income tax for which they were liable.  [786-788]

APPEAL from decisions of the Appellate Tax Board.

*Harvey E. Greif (Alan B. Almeida* with him) for the tax-
payers.

*H. Reed Witherby,* Assistant Attorney General, for the
Commissioner of Revenue.

HENNESSEY, C.J.  This is an appeal from decisions of the
Appellate Tax Board (board).  The appellants (taxpayers)
are husband and wife.  The case arises under the personal
income tax law, G. L. c. 62, §§ 1-8, as appearing in
St. 1973, c. 723, § 2.  The 1973 revision governs both tax
years (1974 and 1975) at issue.  The board decided in favor
of the Commissioner.  We affirm its decisions.

The applicable statutes start from the concept of "Massa-
chusetts gross income."  G. L. c. 62, § 2 (*a*).  Massachusetts
gross income is divided into two classes:  Part A gross in-
come, which consists of dividends, interest, and net capital
gain (with certain exceptions), G. L. c. 62, § 2 (*b*) (1); and
Part B gross income, which is "the remainder of the Massa-
chusetts gross income."  G. L. c. 62, § 2 (*b*) (2).  Part A tax-
able income and Part B taxable income are, in each in-

---

[1] Marie W. Kargman.

stance, calculated by adjusting gross income for certain specified deductions and exemptions. Part A taxable income is taxed at 9%; Part B taxable income is taxed at 5%.

Statute 1973, c. 723, also provides an exemption for individuals and married taxpayers with low incomes. G. L. c. 62, § 5 (*a*). With respect to a married couple filing a joint return, the exemption is available if their "total income" for the taxable year does not exceed $5,000 (or to the extent that the tax would reduce their income below that amount). "Total income" is defined as follows: "For purposes of this section, 'total income' means the sum of (i) the Part A adjusted gross income, (ii) the Part B adjusted gross income, (iii) the amount deducted under subparagraphs (A) and (C) of section two (a) (2), and (iv) interest on governmental obligations excluded under section one hundred and three of the Code to the extent not includable in Massachusetts gross income under section two (*a*) (1) (A)." *Id.*

On their 1974 joint income tax return, the taxpayers reported total "Part B adjusted gross income" (5% income) of negative $796,699 (loss) and "Part A adjusted gross income" (9% income) of $19,971. Dividends and interest reported by the taxpayers as "Part A adjusted gross income" for 1974 were *not* effectively connected with the active conduct of a trade or business by the taxpayers. On Part IV of the 1974 return (Total Income for No Tax Status Purposes), the taxpayers entered the loss with respect to 5% income, $796,699, entered their total 9% income, $19,971, and arrived at "total income" of negative $771,433 (loss). The taxpayers indicated that they claimed the "no tax status" exemption and, consequently, reported their income tax on both their 5% income and their 9% income as "None." The Commissioner assessed an income tax against the taxpayers, together with interest and penalties, for the calendar year 1974. The taxpayers paid the assessment in full and timely filed an application for abatement. This was denied and the taxpayers filed a petition, under the formal procedure, with the board. The board upheld the Commissioner's rulings, and this appeal resulted.

Subsequently, the same sequence of events, with, of course, different monetary amounts involved, occurred as to the taxpayers' 1975 income tax return.

The taxpayers argue that, in calculating their "total income" under § 5 (*a*), they properly offset against their Part A adjusted gross income and their interest on governmental obligations a negative amount of Part B adjusted gross income, thereby sheltering their Part A income from taxation. We disagree.

The taxpayers and the Commissioner offer logical arguments for their respective positions. The taxpayers argue, from analogous sources, that the meaning of "income" favors their cause. The taxpayers also argue that the Commissioner's position that a negative number (or loss) cannot be entered for either the Part A factor or the Part B factor in arriving at "total income" under § 5 (*a*), and that a "zero" must be substituted for the loss factor, is an impermissible distortion of the plain language of the statute. They stress particularly in their brief "that when the statute being construed is a tax statute, (i) it must be strictly construed; (ii) the power to tax must be stated in express terms and cannot be deduced by implication; and (iii) all doubts in interpreting the statute must be resolved in favor of the taxpayer. *Commissioner of Corporations & Taxation* v. *Aetna Life Ins. Co.*, 328 Mass. 404 (1952)."

The Commissioner argues that "income," as usually defined, cannot be twisted, as the taxpayers would have it, to mean "loss"; that G. L. c. 62, § 5 (*a*), as shown by the consistent wording in the titles in several revised versions over the years, was intended to provide for persons of small means; that the method urged by the taxpayers could provide exemption from taxes for persons of substantial means, and here would provide exemption for the taxpayers who had nonbusiness adjusted gross income in 1974 of $19,971, and in 1975 of $22,710. The Commissioner also argues that, because of § 5 (*a*) is an exemption, any ambiguity must be resolved against the taxpayer. See *Animal Rescue League* v. *Assessors of Bourne*, 310 Mass. 330, 332 (1941).

The Commissioner points out that the contemporaneous construction of a statute by the administrative agency charged with its enforcement is entitled to weight (*American Family Life Assurance Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 474-475 [1983], and cases cited), and that this principle has extra force where the administrative interpretation is of long standing, *Dexter* v. *State Tax Comm'n*, 350 Mass. 380, 386 (1966). Pursuant to this point, the Commissioner relies on consistent administrative rulings since 1924, which are consistent with the Commissioner's present position.

The taxpayers rely on two opinions of the Board of Tax Appeals, the predecessor of the Appellate Tax Board. *Philip M. Tucker Co.* v. *Commissioner of Corps. & Taxation*, 1 Board of Tax Appeals 259 (1932). *Everett Trust Co.* v. *Commissioner of Corps. & Taxation*, 1 Board of Tax Appeals 1 (1931). In each of these cases, the board held that under G. L. c. 62, as applied to certain corporations, in calculating "net income" a negative quantity should be used as such, and "zero" should not be substituted. The Commissioner answers by pointing out that negative numbers are permitted to be used in the separate calculation of Part A income and Part B income, but that is no assistance in construing the legislative intent as to the use of such numbers in arriving at "total income" under § 5 (*a*).

The foregoing summary of the opposing arguments presents just about a standoff. We think, however, that the legislative intent at issue here can be fairly construed with the assistance of a statutory provision (G. L. c. 62, § 2 [*c*][1]), which is not directly involved with this case. This provision, like the other provisions of c. 62, § 2 and § 5 (*a*), discussed above, was inserted by St. 1973, c. 723, § 1. General Laws c. 62, § 2 (*c*) (1), provides: "Part A adjusted gross income shall be the Part A gross income less the following deductions: (1) Any excess of the deductions allowable under paragraph (*d*) below over the Part B gross income; but the amount deductible under this paragraph shall not exceed the amount of Part A gross income which is effective-

ly connected with the active conduct of a trade or business of the taxpayer."

Statutes which do not necessarily conflict should be construed to have consistent directives so that both may be given effect, *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 203 (1981), and statutes should be interpreted as a whole to constitute a consistent and harmonious provision, *Milton* v. *Metropolitan Dist. Comm'n*, 342 Mass. 222, 225 (1961); *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946). The effect of § 2 (*c*) (1) is to limit the allowance of business deductions against Part A income to the amount of Part A income which is effectively connected with the active conduct of a trade or business by the taxpayer.[2] We agree with the reasoning of the Commissioner that, since it is stipulated here that the taxpayers had no Part A income fitting this description, the construction of § 5 (*a*) urged by the taxpayers would directly undercut the thrust of this limitation. It would permit the taxpayers to shelter substantial amounts of unearned income from taxation by utilizing as an offset in § 5 (*a*), the very excess deductions which § 2 (*c*) (1) specifically prohibits them from deducting against the same unearned income. We conclude that such a result would not be consistent with legislative intent.

The decisions of the Appellate Tax Board are affirmed.

*So ordered.*

---

[2] For many years, business expenses were not deductible from non-business income. *Barnes* v. *State Tax Comm'n*, 363 Mass. 589, 592 (1973). However, St. 1971, c. 555, § 5, rewrote G. L. c. 62, in such a way that this court concluded that such deductions were permitted. *Id.* at 591-593. Presumably, this was a result not intended by the Legislature in its enactment of St. 1971, c. 555, § 5, because St. 1973, c. 723, § 2, among a number of other changes, inserted § 2 (*c*) (1) in G. L. c. 62. In dictum in *Druker* v. *State Tax Comm'n*, 374 Mass. 198, 199-200 (1978), we indicated, just as we have concluded in the instant case, that business expenses may be deducted against Part A income only to the extent that they are effectively connected to Part A income.