## COMMONWEALTH vs. EDWARD J. DENEHY.

Hampden. September 3, 2013. - January 8, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Practice, Criminal,* Recording of proceedings, Waiver, Assistance of counsel, Speedy trial, Restitution. *Constitutional Law,* Assistance of counsel, Speedy trial. *Restitution.*

This court concluded that a criminal defendant had waived his claim that he was denied a speedy trial pursuant to Mass. R. Crim. P. 36, where a docket entry indicated that the defendant's rule 36 motion was withdrawn and trial counsel had not indicated on the record her desire to pursue the rule 36 motion or sought correction of the docket entry; further, this court declined to correct or modify the record, given that trial counsel's supporting affidavit was insufficient to rebut the prima facie verity of the docket. [726-728]

At a criminal trial, defense counsel's failure to preserve the defendant's meritorious motion for a speedy trial pursuant to Mass. R. Crim. P. 36 constituted ineffective assistance. [728-729]

This court concluded that a criminal defendant's right to a speedy trial under Mass. R. Crim. P. 36 was violated, where the Commonwealth did not justify fourteen days of delay in excess of the twelve-month limit imposed by rule 36. [729-735]

Statement that judges have authority to conduct restitution hearings and in so doing make factual determinations relevant to the restitution award, such that no violation of the Sixth Amendment to the United States Constitution or art. 12 of the Massachusetts Declaration of Rights occurs as long as the proper procedural mechanisms are employed in the restitution hearing. [736-738]

Discussion of the requirement of a sufficient nexus between a restitution order and the underlying crime, i.e., a causal connection between the order and the defendant's conduct. [738-740]

Discussion of the evidentiary standard to be employed by judges in determining restitution awards. [740-741]

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on August 21, 2008.

A motion to dismiss was heard by *Jacques C. Leroy,* J., and the case was tried before *Nancy Dusek-Gomez,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Merritt Schnipper* for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

*Martha Coakley,* Attorney General, & *Randall E. Ravitz,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

CORDY, J. The defendant, Edward J. Denehy, was convicted of disorderly conduct in violation of G. L. c. 272, § 53, and assault by means of a dangerous weapon in violation of G. L. c. 265, § 15B, on May 10, 2011, nearly three years after his initial arraignment on August 21, 2008. On appeal, he makes two primary arguments. First, he contends that he was not afforded a speedy trial under Mass. R. Crim. P. 36 (b), as amended, 422 Mass. 1503 (1996), and therefore he is entitled to dismissal of the charges against him with prejudice. Second, he avers that the trial judge's order of restitution to compensate a police officer whose glasses were damaged during his interaction with the defendant was unconstitutional under *Apprendi* v. *New Jersey,* 530 U.S. 466, 490 (2000), and its progeny, which require certain factual findings relevant to sentencing to be made by a jury. Further, he contends that, where he was acquitted of assault and battery on a police officer, the restitution award did not have a sufficient nexus to the crimes of which he was convicted. We granted the defendant's application for direct appellate review to clarify ambiguities regarding the Mass. R. Crim. P. 36 calculus and restitution orders.[1]

We conclude that the defendant was denied a speedy trial, and any failures by his trial counsel to perfect that claim constituted ineffective assistance of counsel. Although we resolve this matter on those grounds, we further conclude that the trial judge's determination of a restitution award did not violate *Apprendi* principles nor run astray of our "causal connection" requirement for such awards under *Commonwealth* v. *McIntyre,* 436 Mass. 829, 834 (2002). Because the requirements of rule 36 were not met, however, the defendant is entitled to have his convictions vacated and the complaints dismissed.[2]

*Background.* On August, 20, 2008, the defendant engaged in

---

[1] We acknowledge the amicus brief of the Attorney General.

[2] Because we dispose of the case on this ground, we do not address the defendant's challenge to the sufficiency of the evidence for his conviction of

a confrontation with police officers at his home in Springfield. Officer Timothy Morrow of the Springfield police department entered the defendant's property on foot through an open gate after pursuing an unregistered, speeding dirt bike, which he then observed to be parked in a shed on the defendant's property. The officer briefly returned to his vehicle, and when he went back to the property, he found the defendant standing behind a closed gate, accompanied by a Great Dane dog and blocking the officer's reentry. During the conversation that followed, the defendant refused to permit Officer Morrow to enter his property and allegedly threatened to have his dog attack the officer if he entered. When several other officers arrived at the scene, they informed the defendant that they would enter the property to obtain the dirt bike and instructed him to remove the dog.

After opening the gate and entering the property, Officer Morrow was reportedly struck on the head and his glasses were damaged. In response to the confusion that ensued, a second officer sprayed the dog and then the defendant with pepper spray, while a third officer attempted to separate the dog from the defendant. The defendant was then handcuffed.

The next day, on August 21, 2008, the defendant was arraigned and charged with one count each of assault and battery on a police officer (G. L. c. 265, § 13D), disorderly conduct (G. L. c. 272, § 53), and assault by means of a dangerous weapon (G. L. c. 265, § 15B). Due to court congestion and requested continuances, the case was continued for more than twenty months. On May 5, 2010, the parties appeared in court for trial, but for the third time the Commonwealth did not have

---

assault by means of a dangerous weapon, including his claim that he was prejudiced by the erroneous admission of "expert" testimony and a past recollection recorded from the responding police officer. We also need not address the defendant's contention that he was entitled to a jury instruction regarding his right under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights to exclude others from his property. However, we emphasize that self-help is not available to a citizen who feels that a police officer's entry onto his property is unwarranted. See *Commonwealth* v. *Moreira*, 388 Mass. 596, 601 (1983) ("[I]n the absence of excessive or unnecessary force by an arresting officer, a person may not use force to resist an arrest by one who he knows or has good reason to believe is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances").

an essential witness present. The defendant moved to dismiss, and the trial judge granted the motion without prejudice.

On July 28, 2010, the Commonwealth sought a new complaint with identical charges, and on August 12, 2010, the defendant was arraigned on that complaint. On November 17, 2010, one day prior to the scheduled trial date, the defendant filed a motion to dismiss for lack of a speedy trial under Mass. R. Crim. P. 36. The docket sheet indicates that, on the next day, the rule 36 motion was withdrawn, and the case was continued at the defendant's request. Due to further requested and court-imposed continuances, trial was not held until May 9, 2011.

At trial, a jury found the defendant guilty of disorderly conduct and assault by means of a dangerous weapon, and not guilty of assault and battery on a police officer. The trial judge assessed a one hundred dollar fine on the disorderly conduct conviction and ordered unsupervised probation. In addition, she ordered restitution to be paid to Officer Morrow in the amount of $264, for the replacement of his damaged glasses.

*Discussion.* 1. *Speedy trial.* We turn first to whether the defendant's rule 36 motion to dismiss for lack of a speedy trial is properly before us. The defendant argues first that this court should correct or modify the record, in accordance with a motion he filed pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979), to deem his motion to dismiss denied rather than withdrawn, and second that his rule 36 motion should be granted because he was denied a speedy trial. The Commonwealth asserts that the defendant's rule 36 motion was clearly withdrawn and therefore the issue is not preserved on appeal, and that applicable exclusions under rule 36 render the proceedings within the twelve-month period required by the rule. We agree with the Commonwealth that the defendant's motion must be considered withdrawn, but we conclude that the withdrawal of the motion in the circumstances of this case constituted ineffective assistance of counsel and therefore consider its merits.

    a. *Rule 8 (e) motion.* Under Mass. R. A. P. 8 (e), if the record does not "truly disclose[] what occurred in the lower court," a party may move to correct the record "to conform to the truth." The day after counsel filed the rule 36 motion, the motion judge

discussed the motion with the parties but did not rule on it. The docket entry from that day indicates that the motion was "withdrawn." The defendant argues that the docket entry is an erroneous interpretation of a confusing exchange with the judge at the motion hearing.

Docket entries "import incontrovertible verity" and "stand as final" unless corrected by the court. *Savage* v. *Welch*, 246 Mass. 170, 176 (1923). See *Barry* v. *Commonwealth*, 390 Mass. 285, 285, 289 (1983) ("When a claim is raised under rule 36, the docket and minutes of the clerk are prima facie evidence of the facts recorded therein"). In assessing whether a record correction is needed, docket entries may be "supplemented, or even rebutted, by other evidence," including affidavits. *Commonwealth* v. *Mattos*, 404 Mass. 672, 676-677 (1989). Accord *Commonwealth* v. *Fling*, 67 Mass. App. Ct. 232, 237 (2006). However, "[a] party's self-serving and uncorroborated assertions of what transpired at trial cannot serve as grounds to contend that the official record of the proceedings, prepared by a neutral court official, was falsified." *Zabin* v. *Picciotto*, 73 Mass. App. Ct. 141, 173 (2008). Thus, "absent a showing that the court has intentionally falsified the record," the court's "determination is conclusive." *Id.* at 172, quoting *Burda* v. *Spencer*, 28 Mass. App. Ct. 685, 689 (1990).

The only evidence the defendant proffers in support of his argument is an affidavit from trial counsel expressing her intentions and an ambiguous statement in the transcript.[3] This is insufficient to rebut the prima facie verity of the docket. Trial counsel had ample opportunity during the course of the lower court proceedings to indicate on the record her desire to continue to pursue the motion or to seek correction of the docket entry. Cf. *Parks* v. *Johnson*, 46 Mass. App. Ct. 905, 905 (1998) (court declined to consider issue of jury instructions where record did not reflect that appellant had objected and appellant had not

---

[3]At the November 18, 2010, hearing, after the judge had conducted a brief colloquy on the motion filed pursuant to Mass. R. Crim. P. 36 (b), as amended, 422 Mass. 1503 (1996), and indicated that he would not rule on it that day, trial counsel requested a continuance of the trial date. The judge asked, "I thought you were moving on section 36 and . . . now you're asking for a continuance?" and counsel responded, "I am . . . . Sometimes strategy changes."

attempted to correct record to reflect sidebar colloquy in which appellant purportedly objected). We therefore deny the defendant's motion to correct or modify the record and consider the rule 36 motion withdrawn.

Although the rule 36 issue is technically waived, we assess whether trial counsel's error in failing to preserve this issue amounted to ineffective assistance of counsel, a claim alluded to in the parties' briefs. Counsel's performance is ineffective if "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and counsel's conduct "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

Typically, we turn to the merits of the defendant's claim to determine whether the *Saferian* test is implicated. See, e.g., *Commonwealth* v. *Butler*, 464 Mass. 706, 709 (2013); *Commonwealth* v. *Cardenuto*, 406 Mass. 450, 454, 456 (1990). Here, as we discuss *infra*, trial counsel brought a meritorious rule 36 motion claiming that the speedy trial clock had run. However, trial counsel unreasonably relinquished this claim first by apparently withdrawing the motion, second by failing to attempt to correct the record to the extent it was not her intention to withdraw the motion, and third by failing to raise the claim again at trial.[4] See *Commonwealth* v. *Bourdon*, 71 Mass. App. Ct. 420, 429 (2008) ("Where the solution to the problem is within the control of defense counsel . . . it is reasonable to expect him to proceed diligently to correct it and to impose upon him the primary obligation to inquire into the status of *his* motions . . ."). Whether these were tactical decisions or simply oversights, they were manifestly unreasonable given the soundness of the speedy trial claim. See *Commonwealth* v. *Watson*, 455 Mass. 246, 256 (2009) ("A strategic or tactical decision by counsel will not be considered ineffective assistance unless the decision was 'manifestly unreasonable' when made" [citation omitted]). Accord *Commonwealth* v. *Lavoie*, 464 Mass. 83, 89-90, cert. denied, 133 S. Ct. 2356 (2013). Contrast *Common-*

---

[4]Nowhere in her affidavit does trial counsel indicate that she attempted to correct the record prior to trial in order to preserve her rule 36 motion.

*wealth* v. *Boria*, 460 Mass. 249, 253 (2011) (appellate counsel's failure to pursue trial counsel's objection to admissibility of certificate of drug analysis did not constitute ineffective assistance where claim would have been futile).

Further, insofar as the motion was a meritorious one that properly should have resulted in the dismissal of the case, trial counsel's errors prejudiced the defendant by requiring him to proceed to trial in the first instance. See *Saferian*, 366 Mass. at 96. Trial counsel's failure to continue to pursue the rule 36 motion thus constituted ineffective assistance. Cf. *Commonwealth* v. *Acevedo*, 446 Mass. 435, 445-447 (2006) (counsel's failure to request reasonable provocation instruction constituted ineffective assistance because defendant was entitled to instruction, counsel's decision not to request it was manifestly unreasonable, and it so deprived defendant of "substantial available defense").

b. *Speedy trial calculations.* Under rule 36, if a defendant is not "tried within twelve months after the return day," he or she is "entitled upon motion to a dismissal of the charges." Mass. R. Crim. P. 36 (b) (1) (C), (D). A defendant may establish a prima facie violation by demonstrating that more than one year elapsed between the return date, here the date of arraignment, and trial.[5] *Commonwealth* v. *Spaulding*, 411 Mass. 503, 504 & n.3 (1992), citing Mass. R. Crim. P. 2 (b) (15), 378 Mass. 844 (1979). The burden then shifts to the Commonwealth to justify the delay. See *Spaulding, supra* at 504. "The delay may be excused by a showing that it falls within one of the '[e]xcluded [p]eriods' provided in rule 36 (b) (2), or by a showing that the defendant acquiesced in, was responsible for, or benefited from the delay"[6] (citations omitted). *Id.* "A failure to object to a continuance or other delay constitutes acquiescence." *Commonwealth* v. *Tanner*, 417 Mass. 1, 3 (1994). Further, "[t]he filing of the [rule 36] motion . . . tolls the running of the time in which a defendant must be tried." *Barry*, 390 Mass. at 294.

---

[5]We note that "the applicable twelve-month period under rule 36 beg[ins] to run from the date the defendant was arraigned on the *first* [complaint]," even if there are subsequent complaints. *Commonwealth* v. *Conefrey*, 410 Mass. 1, 3 (1991), *S.C.*, 420 Mass. 508 (1995).

[6]"[O]nce [the Commonwealth] establishes that an act or event triggers an excludable period of time, the exclusion of the period is automatic." *Barry* v. *Commonwealth*, 390 Mass. 285, 292 (1983).

"[W]e are in as good a position as the judge below to decide whether the time limits imposed by the rule have run." *Id.* at 289. Although the record is not entirely clear, we rely on the docket and the clerk's minutes to establish the relevant dates. *Id.* Where applicable, these materials may be supplemented by additional evidence.[7] *Mattos*, 404 Mass. at 676-677; *Fling*, 67 Mass. App. Ct. at 237.

The number of days that elapsed between the date of the defendant's arraignment, August 21, 2008, and the date on which he filed his rule 36 motion to dismiss, November 17, 2010, is 818 days.[8],[9] Subtracting twelve months (365 days) from this total leaves 453 days for which the Commonwealth must justify a delay. Of these, 308 days account for continuances attributable to the defendant, by acquiescence or otherwise, and are therefore excludable because of the benefit they afforded him.[10] See *Commonwealth* v. *Lauria*, 411 Mass. 63, 68 (1991) (delays for which "defendant is at least partially responsible" or through which "defendant has acquired some benefit" are excluded). The remaining 145 days are disputed and account for three categories of time. We consider each category separately and conclude that the Commonwealth cannot justify fourteen days in excess of the twelve-month limit imposed by rule 36.

---

[7]We acknowledge defense counsel's efforts to reconstruct missing portions of the transcript. Where there are discrepancies in the parties' briefs in reference to dates and proceedings, we rely first on the docket entries and then on the affidavit of trial counsel in support of the defendant's motion to dismiss.

[8]"In computing any time limit other than an excluded period, the day of the act or event which causes a designated period of time to begin to run shall not be included. Computation of an excluded period shall include both the first and the last day of the excludable act or event." Mass. R. Crim. P. 36 (b) (3). We interpret this to mean that, for included periods, we do not include either the first or last day of the period, as the last day marks the start of another period. For excludable periods, we include both the first and last day.

[9]Although we have stated that a rule 36 motion must be heard promptly in order for it to toll the time period, see *Barry*, 390 Mass. at 294, the parties agree on the exclusion of all continuances following the filing of the motion. Therefore, we need not decide whether the motion was "promptly" heard for the purposes of these calculations.

[10]These time periods are (1) January 9, 2009, to March 9, 2009 (sixty days); (2) May 5, 2009, to November 3, 2009 (183 days); and (3) November 3, 2009, to January 6, 2010 (sixty-five days). Although the 183-day delay is only partially attributable to the defendant, the defendant concedes the entire period as excludable.

i. *Court-ordered continuances.* Two of the continuances contributing to the delay of the defendant's trial, accounting for 110 days, are attributable to court congestion or lack of available trial judges or jurors.[11] The defendant argues that these continuances imposed by the court should not be attributable to him and therefore should be counted against the Commonwealth. He asserts that his failure to object to these continuances should not be considered an "acquiescence" because any such objection would have been futile. The Commonwealth argues that these delays should be excluded because the prosecution did not request them and, therefore, the Commonwealth should not be penalized.

Our precedent firmly establishes that a defendant must object to a continuance to include the resulting delay in a rule 36 calculation. See *Spaulding,* 411 Mass. at 507-508; *Lauria,* 411 Mass. at 68; *Barry,* 390 Mass. at 298; *Commonwealth v. Daggett,* 369 Mass. 790, 793 (1976). We decline to differentiate for rule 36 purposes between continuances ordered by the court and those requested by the parties.[12] See *Commonwealth v. Conefrey,* 410 Mass. 1, 5 (1991), *S.C.,* 420 Mass. 508 (1995) (noting that defendant is "at least partially responsible for . . . delay"

---

[11]These time periods are (1) March 9, 2009, to May 5, 2009 (fifty-eight days); and (2) January 6, 2010, to February 26, 2010 (fifty-two days).

[12]The defendant argues that requiring him to object to a continuance ordered by the court due to lack of available court resources would constitute a "meaningless formality." Although we recognize the frustration inherent in a trial court's congested calendar, we disagree. Even if the objection is futile, where short staffing in the court renders a continuance essentially nondiscretionary, the defendant nonetheless carries the duty of reminding the court of the rule 36 implications of continuing the proceedings. See *Barry,* 390 Mass. at 296-297. Defendants have an obligation to press their case forward and must "express their dissatisfaction with the continuing delay or indicate that they might be incurring prejudice as a result of it." *Commonwealth v. Lauria,* 411 Mass. 63, 69-70 (1991) (rejecting defendants' argument that objection to motion to continue would be "redundant" and futile, and asserting that defense counsel must remind court and Commonwealth of mutual obligations to move case forward). *Commonwealth v. Bourdon,* 71 Mass. App. Ct. 420, 426 (2008) (recognizing tension implicit in objecting to court's own need for a continuance but nonetheless requiring objection for rule 36 purposes, in part to apprise judge of continuance's speedy trial implications). "Such formalized objection . . . serves the vital purpose of notifying both the prosecutor and the court that attendant delays may not be excluded from the operation of the rule." *Id.*

caused by "court congestion" if he agrees to continuance). Nor do we wish to penalize unnecessarily the Commonwealth for delays to which it may object as well. See *Lauria*, 411 Mass. at 69; Reporter's Notes to Rule 36 (b) (2), Mass. Rules of Court, Rules of Criminal Procedure, at 237 (West 2013) ("[T]he Commonwealth should not be penalized . . . when the causes for delay are beyond its control"). The defendant must therefore object to the delay to include the delay in the speedy trial calculus. *Spaulding*, 411 Mass. at 505. *Barry*, 390 Mass. at 296-297. Otherwise, he will be deemed to have acquiesced to the delay. See *Lauria*, 411 Mass. at 68. Here, there is no indication that the defendant raised an objection to the court-imposed continuances.[13] Therefore, he is deemed to have acquiesced to them, and the 110 resulting days are excluded.

ii. *Period during which defendant was without counsel.* The Commonwealth asserts that the brief time period, from October 10, 2008, to October 30, 2008, during which the defendant was unrepresented and sought replacement counsel, should be excluded because the defendant benefited from this delay. We agree with the Commonwealth. See *Commonwealth* v. *Marable*, 427 Mass. 504, 506 (1998) (excluding period during which defendant lacked "permanent counsel" because his "legal representation was in flux" and he therefore benefited from time "to retain counsel for trial"); *Commonwealth* v. *Judd*, 25 Mass. App. Ct. 921, 923-924 (1987) (excluding seven-month period during which "defendant's representation was in a state of flux" due to "changes in counsel" because defendant benefited from delay). Therefore, although this time period is not dispositive, we exclude the twenty-one days during which the defendant was without counsel.[14]

iii. *Period between dismissal and second arraignment.* Whether

---

[13]The defendant argues that he objected to one of the court-ordered continuances, from March 9, 2009, to May 5, 2009. However, he bases this claim on the fact that he affirmatively acquiesced to other court-ordered continuances but did not do so for this one. We consider this argument unpersuasive.

[14]We distinguish this case from *Commonwealth* v. *Rodgers*, 448 Mass. 538, 543-546 (2007). In that case, the defendant had filed a motion for new counsel, on which the court delayed in acting. The defendant did not benefit from the delay but, rather, was prejudiced by the continued actions of the counsel he wished to replace. *Id.* at 544 (including in rule 36 calculus delays to which counsel acquiesced). In contrast, here the defendant benefited from the op-

the defendant here was afforded a speedy trial therefore turns on the time period between the dismissal of the first complaint, on May 5, 2010, and the second arraignment on identical charges, on August 12, 2010. The Commonwealth argues that rule 36 (b) (2) (D) requires the period's exclusion because no charges were pending during this time. The defendant asserts that rule 36 (b) (2) (D) applies only to entry of a nolle prosequi and does not exclude time periods resulting from judicial dismissals. "[W]e are the final arbiter of what the rule means and permits." *Commonwealth* v. *Durham*, 446 Mass. 212, 221, cert. denied, 549 U.S. 855 (2006). We agree with the defendant that rule 36 (b) (2) (D) excludes only those time periods following prosecutorial dismissals as defined by Mass. R. Crim. P. 16, 378 Mass. 885 (1979).

In interpreting a rule of criminal procedure, we turn first to the rule's plain language. *Commonwealth* v. *Hanright*, 465 Mass. 639, 641 (2013). We consider no words to be superfluous. *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946). "[W]here possible, we construe the various provisions of a [rule] in harmony with one another." *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 859 (2005), citing *Kargman* v. *Commissioner of Revenue*, 389 Mass. 784, 788 (1983).

Rule 36 (b) (2) (D) provides that, "[i]f the complaint or indictment is dismissed by the prosecution and thereafter a charge is filed against the defendant for the same or a related offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge" is excluded from the speedy trial calculus. Importantly, that rule employs the phrase, "*dismissed by the prosecution*" (emphasis added). This explicit reference to Mass. R. Crim. P. 16, "dismissal by the prosecution," makes clear that the rule excludes only those dismissals defined by rule 16. The reporter's notes to rule 36 (b) (2) (D) further support this narrow reading. "This subdivision provides for an excluded period when the prosecution nol prosses the charges pending against the

portunity the delay provided to seek new counsel. See *Commonwealth* v. *Marable*, 427 Mass. 504, 506 (1998); *Commonwealth* v. *Fling*, 67 Mass. App. Ct. 232, 235 (2006).

defendant pursuant to Mass. R. Crim. P. 16 and subsequently brings new charges for the same offense." Reporter's Notes to Rule 36 (b) (2) (D), Mass. Rules of Court, Rules of Criminal Procedure, at 238 (West 2013). See *Commonwealth* v. *Mottola*, 10 Mass. App. Ct. 775, 777 (1980) (relying on reporter's notes to rule of criminal procedure to facilitate rule's interpretation). If the rule intended a broader application, it would simply omit the prepositional phrase. Cf. *Commonwealth* v. *Perella*, 464 Mass. 274, 279-280 (2013) (concluding that use of "indictment or complaint" in some subsections of statute and only "indictment" in others constituted meaningful distinction, in part because words "or complaint" could not be read as superfluous).

Further, we recognize a relevant distinction between a judicial dismissal and an entry of a nolle prosequi. A nolle prosequi is a strategic decision by the Commonwealth to cease pursuing charges. Its entry is thus an affirmative exercise of a prosecutorial tool to discontinue prosecution. See *Commonwealth* v. *Pellegrini*, 414 Mass. 402, 405 (1993); *Commonwealth* v. *Gordon*, 410 Mass. 498, 500 (1991). In contrast, a judicial dismissal, even one without prejudice, signals that the Commonwealth has not met its prosecutorial burden. "[W]here a prosecutor is unprepared to present her case due to the unexpected absence of a witness, a judge has discretion to dismiss the case without prejudice." *Commonwealth* v. *Lucero*, 450 Mass. 1032, 1033 (2008), citing *Commonwealth* v. *Connelly*, 418 Mass. 37, 38 (1994). The delay that results from the dismissal and subsequent rearraignment is attributable to the Commonwealth. The defendant's relief from criminal charges is only temporary, and the prolonging of the process is in part due to the Commonwealth's failure to fulfil its own rule 36 obligations to move the matter along diligently. We cannot permit the Commonwealth to earn itself more time simply by being unprepared.[15]

Here, during the course of the proceedings prior to the judge's

---

[15]We recognize that articulating such a distinction may encourage the Commonwealth to enter a nolle prosequi rather than pursue a case for which it is unprepared. However, entry of a nolle prosequi must be accompanied by a statement explaining the reasons for the entry. *Commonwealth* v. *Miranda*, 415 Mass. 1, 4 n.3 (1993); Mass. R. Crim. P. 16 (a), 378 Mass. 885 (1979). "The statement of reasons is designed to protect the public's interest in the

dismissal of the case on May 5, 2010, the defendant was prepared for trial on two occasions on which the trial was scheduled,[16] but the Commonwealth requested continuances because its witnesses were not present. When the parties appeared for trial on May 5 and a Commonwealth witness again failed to appear, the trial judge dismissed the charges on the defendant's motion. Unlike an entry of a nolle prosequi in which the Commonwealth actively directs the proceeding, the judge determined that the Commonwealth was unprepared to prosecute the matter and dismissed it.[17]

We conclude that the time period running from the court's dismissal of the charges against the defendant and his arraignment on the second complaint of identical charges, comprising the ninety-eight days between May 5 and August 12, 2010, is not excludable under rule 36 (b) (2) (D) or any other provision of rule 36. Consequently, these days must count in the speedy trial calculus.[18]

In sum, the Commonwealth has not justified fourteen days of delay,[19] and the defendant's right to a speedy trial under rule 36 was violated. We therefore reverse the judgments of conviction.

integrity of the prosecutor's decision . . . ." *Commonwealth* v. *Sitko*, 372 Mass. 305, 309 n.2 (1977), *S.C.*, 379 Mass. 921 (1980). This requirement should quell any temptation to enter a nolle prosequi as a work-around to the speedy trial mandate of rule 36.

[16]These occasions were February 26, 2010, and April 1, 2010.

[17]We are not persuaded that the witnesses were "unavailable" as contemplated by Mass. R. Crim. P. 36 (b) (2) (B), such that the delay resulting from their absence would be excluded from the speedy trial calculus. The witnesses here were local police officers and would have been readily locatable by the Commonwealth.

[18]We note that the speedy trial calculus under rule 36 differs from the analysis applied to constitutional claims. *Lauria*, 411 Mass. at 67. Therefore, we need not reconcile our holding here with that of *Commonwealth* v. *Butler*, 464 Mass. 706, 707, 713 (2013).

[19]The applicable calculations are as follows:

After subtracting 365 days from the 818 days total (August 21, 2008, to November 17, 2010), there are 453 days for the Commonwealth to justify.

Of those 453 days, 439 are excludable:

    a. 308 days for continuances requested or acquiesced in by the defendant (January 9, 2009, to March 9, 2009; May 5, 2009, to November 3, 2009; and November 3, 2009, to January 6, 2010);

    b. 110 days for court-ordered continuances to which the defendant did

2. *Restitution.* a. Apprendi *application.* Although we decide this case on rule 36 grounds, we address the question of restitution to clarify our case law following decisions of the United States Supreme Court in *Southern Union Co.* v. *United States,* 132 S. Ct. 2344 (2012), and *Alleyne* v. *United States,* 133 S. Ct. 2151 (2013). The defendant asserts that, pursuant to these cases, factual determinations relevant to a restitution order must be made by a jury beyond a reasonable doubt, rather than by the judge by a preponderance of the evidence. We agree with the Commonwealth that these cases are not at odds with our approach to restitution.

Under *Apprendi,* 530 U.S. at 490, and its progeny, certain factual determinations relevant to sentencing must be found by a jury beyond a reasonable doubt. The Supreme Court has interpreted this to include any fact that aggravates the punishment, either by raising the floor or the ceiling, such that "the fact necessarily forms a constituent part of a new offense" or "alters the prescribed range of sentences to which a criminal defendant is exposed." *Alleyne,* 133 S. Ct. at 2160, 2162-2163. Accord *Southern Union,* 132 S. Ct. at 2352; *Apprendi,* 530 U.S. at 490. Once the jury has found the facts needed to establish the statutory sentencing limits, the judge may exercise discretion within this range. See *Southern Union,* 132 S. Ct. at 2353, 2355 ("court [may] select a fine from within the maximum authorized by jury-found facts"). In this context, we read the *Apprendi* line of cases to mean that where relevant facts would either identify or shift the legislatively prescribed sentencing parameters that the judge will employ, those facts must be found by a jury beyond a reasonable doubt in order to satisfy a criminal defendant's Sixth Amendment right to a jury trial.

Massachusetts lacks any statutory prescription for imposing restitution as part of sentencing other than a general legislative encouragement to make victims whole. See G. L. c. 258B, § 3

not object (March 9, 2009, to May 5, 2009; and January 6, 2010, to February 26, 2010); and

c. 21 days for the time period during which the defendant was without counsel (October 10, 2008, to October 30, 2008).

Therefore, fourteen days remain as unjustifiable delay beyond the twelve-month limit in rule 36.

(indicating that restitution should be afforded to victims of crime "to the greatest extent possible"). The power to order restitution in criminal cases "derives from the judge's power to order conditions of probation under G. L. c. 276, §§ 87, 87A, and G. L. c. 279, § 1." *McIntyre*, 436 Mass. at 833. Cf. *Commonwealth* v. *Rotonda*, 434 Mass. 211, 221 (2001). The judicial power to order restitution has been described as "unquestionable," *Commonwealth* v. *Casanova*, 65 Mass. App. Ct. 750, 754 (2006); free of "any [statutory] limitation on a judge's authority," *McIntyre*, 436 Mass. at 834; and affording judges "significant latitude," *Commonwealth* v. *Rousseau*, 465 Mass. 372, 389 (2013), in imposing such conditions.[20]

We distinguish restitution from punishments such as imprisonment and criminal fines that are accompanied by statutory prescriptions. Where, as in *Southern Union*, 132 S. Ct. at 2349, a legislature has explicitly tied the calculation of the amount of the criminal fine or penalty to particular facts, a jury determination may be necessary.[21] However, "sentencing discretion, informed by judicial factfinding, does not violate the [Sixth] Amendment." *Alleyne*, 133 S. Ct. at 2163.

Because we treat restitution as an entirely judicially determined penalty, lacking any legislative parameters, the mandate of *Apprendi* does not apply.[22] See *McIntyre*, 436 Mass. at 833 (acknowledging *Apprendi* and classifying restitution as sentenc-

[20]Although there are no explicit statutory limitations guiding the imposition of restitution, we recognize several judicially imposed restrictions. These include a causation test to ensure that the restitution award is connected to the crime, *Commonwealth* v. *McIntyre*, 436 Mass. 829, 835 (2002); a limitation to economic losses, *Commonwealth* v. *Rotonda*, 434 Mass. 211, 221 (2001); a requirement of evidentiary support for the order, *id.* at 221-222, and *Commonwealth* v. *Nawn*, 394 Mass. 1, 7 (1985); and a requirement that the procedure be fair and reasonable, afforded through a hearing with an opportunity to cross-examine witnesses and rebut with other evidence, *id.*

[21]In *Southern Union Co.* v. *United States*, 132 S. Ct. 2344, 2357 (2012), the United States Supreme Court concluded that criminal fines, like other statutorily prescribed sentences, require jury determination of the facts that inform the punishment. There, the Court held that the duration of a natural gas distributor's violation of a Federal environmental statute was a factual determination to be made by the jury because the statute calculated the amount of the fine based on the length of the violation. *Id.* at 2349, 2357.

[22]Other Federal courts have similarly emphasized that *Southern Union* does not require that restitution fall under *Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000). See, e.g., *United States* v. *Green*, 722 F.3d 1146, 1148-1149 (9th

ing determination to be made by judge); *Commonwealth* v. *Nawn*, 394 Mass. 1, 8 (1985) (concluding that defendant is not entitled to jury trial regarding restitution). Cf. *United States* v. *Booker*, 543 U.S. 220, 236 (2005) (articulating role that *Apprendi* protections serve in preserving power balance between judge and jury in implementing legislative directions). Where there is no applicable minimum or maximum sentence or penalty, there is no *Apprendi* issue. See *Southern Union*, 132 S. Ct. at 2353 ("Nor, a fortiori, could there be an *Apprendi* violation where no maximum is prescribed"); *United States* v. *Pfaff*, 619 F.3d 172, 175 (2d Cir. 2010) ("criminal restitution [is an] indeterminate scheme[] without [a] statutory maximum[]"). Thus, restitution proceedings as they are currently conducted neither usurp the jury's fact-finding function nor deteriorate the constitutional protections afforded to criminal defendants.

We now affirm what we stated in *McIntyre*, 436 Mass. at 833; *Nawn*, 394 Mass. at 8, and elsewhere that a judge has the authority to conduct restitution hearings and, in so doing, make factual determinations relevant to the restitution award. As long as the proper procedural mechanisms are employed in the restitution hearing, we see no violation of the Sixth Amendment or art. 12 in this approach.

b. *Nexus requirement.* We also take this opportunity to clarify the substantive and procedural requirements for a restitution order.[23] The defendant argues that there was an insufficient nexus between the restitution order to compensate the police officer for his broken glasses and the underlying crimes with

---

Cir.), cert. denied, 134 S. Ct. 658 (2013) ("[We have] categorically held that *Apprendi* and its progeny . . . don't apply to restitution" [citations omitted]); *United States* v. *Day*, 700 F.3d 713, 732 (4th Cir. 2012), cert. denied, 133 S. Ct. 2038 (2013) ("[F]ar from demanding a change in tack, the logic of *Southern Union* actually reinforces the correctness of the uniform rule adopted in the federal courts to date. . . . [T]he rule of *Apprendi* is simply not implicated to begin with by a trial court's entry of restitution"); Anderson *vs.* United States, U.S. Dist. Ct., Nos. 12 Civ. 7638 (AKH), 07 Cr. 115 (S.D.N.Y. Feb. 22, 2013) ("*Apprendi* does not apply to determinations of restitution, where no statutory maximum exists"). Accord *United States* v. *Wolfe*, 701 F.3d 1206, 1217-1218 (7th Cir. 2012), cert. denied, 133 S. Ct. 2797 (2013). At least one State court has similarly rejected the application of *Apprendi* to restitution after *Southern Union*. See, e.g., *Smith* v. *State*, 990 N.E.2d 517, 521 (Ind. Ct. App. 2013).

[23]Because we resolve this case on speedy trial grounds, we decline to address in detail the defendant's challenge to the restitution award.

which the defendant was charged: assault by means of a dangerous weapon and disorderly conduct. He claims that because he was acquitted of the charge of assault and battery on a police officer, there is no basis for imposing a restitution award for loss to the police officer. We disagree.

In *McIntyre*, 436 Mass. at 835, we held that there must be a causal connection between an order of restitution and the defendant's conduct. We adopted Florida's approach, laid out in *Glaubius* v. *State*, 688 So. 2d 913, 915 (Fla. 1997), and concluded that "the scope of restitution is limited to 'loss or damage [that] is causally connected to the offense and bears a significant relationship to the offense.' " *McIntyre, supra*, quoting *Glaubius, supra*. This is a broad test that requires a holistic assessment of the facts surrounding the crime, not merely those facts establishing the elements of the crime. See *McIntyre, supra*, quoting *State* v. *Landrum*, 66 Wash. App. 791, 799 (1992) ("[W]e look to the underlying facts of the charged offense, not the name of the crime [of which the defendant was convicted, or] to which the defendant entered a plea").

*McIntyre* aptly illustrates the analysis we employ when, as here, a defendant asserts that a restitution award does not bear a sufficient relationship to the crime for which he is convicted. During an altercation, the defendant in *McIntyre* stabbed the victim, ordered his dog to attack the victim, and kicked the door and fender of the victim's vehicle. *McIntyre*, 436 Mass. at 830. The defendant was convicted of assault and battery by means of a dangerous weapon. *Id.* at 831. As a condition of the probation to which the defendant was sentenced, the judge ordered restitution of $168 for damage to the victim's vehicle. *Id.* The defendant argued that this restitution order was improper because he had not been charged with malicious destruction of property. *Id.* We concluded, however, that "[t]he causal relationship between the criminal episode and the damage to the vehicle" met the nexus requirement because "the damage to the victim's car occurred during the course of an ongoing assault." *Id.* at 836.

The Appeals Court similarly employed this analysis to uphold a restitution order in *Commonwealth* v. *Palmer P.*, 61 Mass.

App. Ct. 230, 232 (2004). There, a juvenile was convicted of breaking and entering during the daytime with intent to commit a felony, but was acquitted on a larceny charge. *Id.* at 230. At sentencing, the judge ordered $1,000 in restitution to compensate the victim, from whose apartment several items totaling $1,000 in value were taken. *Id.* at 231. The Appeals Court noted that, under *McIntyre*, a restitution order is proper "where the judge limit[s] restitution to the documented property damage bearing a significant causal relationship to the crime charged." *Palmer P.*, *supra* at 232, citing *McIntyre*, 436 Mass. at 835-836. It thus determined that the restitution order was appropriate because "the judge could . . . conclude that the personalty was taken from the home during the course of [the] endeavor" of breaking and entering the victim's apartment. *Palmer P.*, *supra* at 233.

We would reach a similar conclusion here. The record reflects that during the commotion of the events on August 20, 2008, Officer Morrow's glasses were damaged. The criminal charges of which the defendant was convicted, disorderly conduct and assault by means of a dangerous weapon, arose out of that commotion. We deem this a sufficient nexus to order restitution.

c. *Evidentiary requirements.* Our case law has established an evidentiary standard that we expect trial judges to employ in determining restitution awards. Although a restitution hearing need not be overly formal, it must afford certain guarantees, including an opportunity for the defendant to cross-examine witnesses and present rebuttal evidence. *Nawn*, 394 Mass. at 7-8. The Commonwealth bears the burden of proving both a causal connection and the amount of the loss by a preponderance of the evidence. See *id.*; *Casanova*, 65 Mass. App. Ct. at 755. A "unilateral statement" from the victim or, as here, from the assistant district attorney about the amount owed may be insufficient to meet this burden. *Nawn*, *supra* at 7, citing *Morgan v. Wofford*, 472 F.2d 822, 827 (5th Cir. 1973).

Although we need not assess the adequacy of the restitution hearing proceedings here, we note that the evidentiary support for the award is questionable. The judge ordered a payment of $264 in restitution to Officer Morrow for replacement glasses. The Commonwealth presented no evidence at sentencing regarding the replacement cost, nor was this amount established at

trial. We emphasize now that "[i]f the record reveals an arbitrary method of determining the amount of restitution, the order cannot stand." *Nawn*, 394 Mass. at 7. Restitution may be ordered only for those economic losses adequately documented by the victim and established by the Commonwealth. *McIntyre*, 436 Mass. at 834. *Rotonda*, 434 Mass. at 221.

*Conclusion.* For the reasons stated above, the judgments of conviction are reversed and the verdicts are set aside. An order is to enter allowing the motion to dismiss the complaint.

*So ordered.*