NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1087

COMMONWEALTH

vs.

GILSON TEIXEIRA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court jury trial, the defendant appeals from convictions of firearms and other offenses.[1] He argues that all the indictments should have been dismissed, contending that the Commonwealth recklessly violated an order of a Boston Municipal Court (BMC) judge that the firearms not be tested without a defense expert present. The defendant further argues that the trial judge committed reversible error by failing to instruct the jury, as required in Commonwealth v. Guardado, 491 Mass. 666, 690 (Guardado I), S.C., 493 Mass. 1 (2023), cert.

_____

[1] The indictments at issue in dockets numbered 1684CR00937 and 1784CR00226 were tried together and the defendant's separate appeals have been consolidated here under the present number.

denied, 144 S. Ct. 2683 (2024), that the defendant's lack of a firearms license was an element of the crime that the Commonwealth was required to prove.  The parties agree that two of the defendant's convictions are duplicative.  We reverse the defendant's conviction on the charge of possession of ammunition without an FID card.  We affirm all other convictions.

Background.  Just after 9 P.M. on October 25, 2016, surveillance cameras on a home in the Dorchester section of Boston captured video footage that depicted three assailants walking up to two victims and firing sixteen shots, resulting in muzzle flashes.  One of the shooters was wearing a dark coat with a fur lined hood.  Meanwhile, a green sedan, later identified as a Nissan Maxima, circled the block twice, on one of those occasions driving the wrong way on a one way street.[2]

Nearby, Boston police Detective Jean Moses Acloque was conducting a drug investigation in an unmarked vehicle.  He heard gunshots, saw the Nissan drive the wrong way on the one way street, and then saw a person get into its rear passenger seat.  Detective Acloque followed the Nissan for about one-quarter mile, never losing sight of it.

---

[2] That video recording exhibit is not included in the appellate record.  The description of what it depicts is taken from trial testimony and the unobjected-to representations of both counsel in opening statement and closing argument.

Police stopped the Nissan.  The defendant was in the rear passenger seat, wearing a jacket with a fur lined hood.  He was bending forward toward the floor of the Nissan, where at his feet police found a Smith & Wesson nine millimeter handgun with no ammunition in it.  In the rear middle seat was Belarmino Monteiro, and in Monteiro's pocket was a Ruger nine millimeter handgun loaded with two rounds of ammunition and bearing Monteiro's fingerprints on the magazine.  At the shooting scene, police found sixteen nine millimeter cartridge casings consistent with having been ejected from those two handguns.[3]

On October 26, 2016, a complaint (firearms complaint) issued in the BMC charging the defendant with firearms offenses.  Although no transcript of the defendant's arraignment is included in the record before us, the parties agree that at that arraignment the defendant's codefendant, Monteiro, filed a motion to inspect the firearms; the BMC judge verbally ordered that the Commonwealth refrain from testing the firearms until one or more of the defendants had the opportunity to arrange for a defense expert to be present.[4]  The prosecution failed to

_____

[3] Under the passenger seat in the Nissan's rear driver's side was a Colt .25 caliber handgun, which did not match any cartridge casings at the scene.  The trial judge allowed a required finding of not guilty as to an indictment alleging that the defendant unlawfully carried that firearm.

[4] At arraignment, the defendant's case was scheduled for a November 17, 2016 probable cause hearing.  See Mass. R. Crim.

3

communicate the judge's order to the Boston police, and on November 7, in violation of the order and unbeknownst to defense counsel, a police ballistician tested the firearms.[5]  On November 14, the BMC judge endorsed Monteiro's motion to inspect or test evidence, ordering that Monteiro's "expert may be present at the testing of any . . . alleged firearm(s)."

After learning of the ballistics testing conducted outside the presence of the defense expert, on December 5, 2016, the defendant filed in the BMC a motion for sanctions, arguing that the Commonwealth had failed to comply with the BMC judge's order at arraignment requiring the Commonwealth to refrain from testing the firearms, and that this failure resulted in the destruction of exculpatory evidence.  The defendant sought exclusion of any evidence of those firearms and moved for an evidentiary hearing in the BMC and to sequester witnesses at it. An evidentiary hearing was scheduled in the BMC for February 8, 2017.

---

P. 3 (f), as appearing in 442 Mass. 1502 (2004).  The Commonwealth has not argued that it was required to expedite testing of the firearms to prepare for that hearing, and so we do not consider that issue.

[5] No documentation of the testing is included in the appellate record before us.  At oral argument, counsel for both parties agreed that the firearms testing occurred on November 7, 2016, as stated by a codefendant's counsel at a Superior Court hearing.

On December 12, 2016, a complaint (assault crimes complaint) issued in the BMC charging the defendant with additional offenses including assault by means of a dangerous weapon, discharge of a firearm within 500 feet of a dwelling, and wanton destruction of property.  On December 14, a grand jury returned indictments (assault crimes indictments) against the defendant alleging those same offenses as well as two counts of armed assault with intent to murder, for which jurisdiction lies in Superior Court.  After the defendant was arraigned in Superior Court on the assault crimes indictments, the assault crimes complaint was dismissed.

On January 13, 2017, a motion hearing was held in the BMC.[6] On the same day, the Commonwealth entered a nolle prosequi of the firearms complaint.  As a result, the BMC sanctions hearing scheduled for February 8 was cancelled.

On March 29, 2017, a grand jury returned additional indictments (firearms indictments) against the defendant.  As at issue here, those included indictments alleging that the defendant unlawfully possessed two firearms (the Smith & Wesson and Ruger handguns), carried a loaded firearm while unlicensed, and unlawfully possessed ammunition.

---

[6] No transcript of that hearing is in the appellate record.

In Superior Court, the defendant filed two motions to dismiss the indictments.[7] In the first motion the defendant argued that the indictments should be dismissed as a sanction for the Commonwealth's violation of the BMC judge's order that the firearms not be tested without a defense expert present. In the second motion, the defendant argued that the indictments should be dismissed as a sanction for the Commonwealth's improper indictment of him, arguing that it improperly obtained the assault crimes indictments and then entered a nolle prosequi of the firearms complaint, without having yet obtained the firearms indictments, to avoid the sanctions hearing scheduled in the BMC for February 8, 2017. A Superior Court judge (motion judge) denied both motions to dismiss.

After a trial before another judge (trial judge), with respect to the indictments charged under docket number 1784CR0026, a jury convicted the defendant of two counts of unlawfully carrying a firearm, G. L. c. 269, § 10 (a); carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); and possessing ammunition without an FID card, G. L. c. 269,

_____

[7] Those motions were filed only in the case pertaining to the firearms indictments, but in them the defendant sought to exclude any evidence of the firearms, which presumably would have affected the Commonwealth's proof as to the assault crimes indictments. For the purposes of our analysis, we assume that the motion judge's rulings on the motions to dismiss pertained to both the firearms and assault crimes indictments.

6

§ 10 (h).  With respect to the indictments charged under docket number 1684CR00937, the jury convicted the defendant of assault by means of a dangerous weapon, G. L. c. 265, § 15B (b); discharge of a firearm within 500 feet of a building, G. L. c. 269, § 12E; and three counts of wanton destruction of property, G. L. c. 266, § 127.[8]  This appeal followed.

Discussion.  1. Motions to dismiss.  a. As sanction for violation of BMC order.  On appeal, the defendant argues that the prosecution was reckless, not negligent, in permitting police to test the firearms in violation of the BMC judge's order.  As evidence of the Commonwealth's recklessness, the defendant points to Commonwealth v. Sanford, 460 Mass. 441, 450 (2011), in which the same district attorney's office and police department violated a similar discovery order.

After an evidentiary hearing at which two prosecutors and an administrative assistant testified, the motion judge found that "at worst, the individual staff members of the Suffolk County District Attorney's Office were negligent."  The motion judge did not make specific findings of fact as to what each of

---

[8] The defendant was acquitted of the two counts of armed assault with intent to murder, one count of assault by means of a dangerous weapon, and one count of wanton destruction of property.

7

those witnesses did,[9] and the exhibits introduced at the hearing are not included in the appellate record.[10]  The motion judge reserved ruling on whether the defendant was prejudiced by the Commonwealth's negligence until the firearms were tested by a defense expert.  At the next hearing date, a codefendant's counsel reported that a defense expert had tested the firearms and they were operable, and the motion judge ruled that, absent any showing that the police ballistician had altered the firearms to render them operable, any prejudice was speculative.

In contrast to the motion judge's clear finding that the employees of the prosecution were "at worst . . . negligent," in

---

[9] The motion judge heard testimony that the prosecutor who was present at the BMC arraignment sent an e-mail to several prosecutors in the office's gang unit referring the case for review for possible indictment and informing them of the BMC judge's ruling.  Sixteen months before, a policy had been circulated by e-mail to all employees of the district attorney's office stating that it was the responsibility of the prosecutor present at arraignment to notify police of any court order not to test evidence; the BMC prosecutor had received the e-mail but was not aware of the policy.  Neither the BMC prosecutor nor the gang unit prosecutors notified police of the BMC judge's order not to test the firearms.  Instead, an administrative assistant in the gang unit sent to the Boston police a request that the firearms be examined for latent prints and ballistics testing. On October 31, 2016, the Boston police e-mailed the administrative assistant that the request had been received and the report would be forwarded upon completion.

[10] From the transcript, it appears that those exhibits included the BMC prosecutor's e-mail to the gang unit, the administrative assistant's request for testing, and the police department's response.

Sanford, "[t]he judge's findings [were] unclear on the question of the level of the Commonwealth's culpability, and specifically whether it acted in bad faith or in reckless disregard of the court's order."  460 Mass. at 450.  Based on the incomplete appellate record before us, we cannot say that the motion judge abused his discretion in finding that the Commonwealth's conduct was negligent and not reckless.  See Commonwealth v. Seino, 479 Mass. 463, 477 n.21 (2018) (defendant failed to establish that Commonwealth acted recklessly in failing to preserve police notes or photographs).  Contrast Sanford, 460 Mass. at 451 (remanding for evidentiary hearing on "the likely exculpatory nature of the unobserved first test firing or the [Commonwealth's] level of culpability").

Moreover, the defendant has not shown prejudice.  As mentioned above, the video footage of the shooting depicted muzzle flashes.  The defendant contends that if a defense expert had been present at the original testing, the expert might have seen the police ballistician adjust the firearms to render them operable.  But, notwithstanding the difficulty -- or impossibility -- of demonstrating what happened at an event from which the defense was excluded, the case law requires that where the Commonwealth's action was merely negligent, the defendant demonstrate "a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the

[material] would have produced evidence favorable to his cause." Sanford, 460 Mass. at 447 (quotation omitted). See Commonwealth v. Williams, 455 Mass. 706, 718 (2010). The motion judge invited the defendant's counsel to consult with the defense ballistics expert and then move for sanctions during trial for the discovery violation, which might include the trial judge's excluding the firearms or giving a jury instruction. The defense did not do so.[11] At trial, on cross-examination of the police ballistician, defense counsel did not ask if his test firing of the firearms was in violation of the BMC judge's order. Nor did defense counsel ask if the ballistician had altered the handguns to render them operable.

b. As sanction for improper indictment. The defendant argues that the motion judge should have dismissed the indictments as a sanction for what he contends was the Commonwealth's improper indictment of him on the firearms offenses. He argues that, after obtaining the assault crimes indictments and entering a nolle prosequi of the firearms complaint, it was improper for the Commonwealth to obtain the firearms indictments.

---

[11] In fact, defense counsel told the trial judge, "Obviously [the ballistician] should be able to testify that the firearms are in fact firearms."

10

In its nolle prosequi of the firearms complaint, the Commonwealth stated its reason as:  "The defendant has been recently indicted for more serious crimes, occurring on the same date and using the same firearms. . . .  Therefore, it is not in the interest of justice to prosecute in two different courts." The defendant argues that that language in the nolle prosequi amounted to a promise by the Commonwealth "not to pursue" the firearms charges, and therefore the Commonwealth's subsequently obtaining the firearms indictments was improper.  We are not persuaded.

In denying the motion to dismiss for improper indictment, the motion judge stated that the firearms offenses were "tied in inextricably" to the armed assault with intent to murder indictments, over which the BMC did not have jurisdiction, and thus the Commonwealth's nolle prosequi of the firearms complaint was "inevitable."  The motion judge also found that the defendant was not prejudiced by the cancellation of the sanctions hearing in the BMC, because a sanctions hearing was held in Superior Court.  The motion judge denied the defendant's request to call the prosecutor who signed the nolle prosequi to testify about his reasons for doing so, noting that doing so would raise "separation of powers issues."

"Generally speaking, the Commonwealth has absolute authority to enter a nolle prosequi at any point before

11

sentencing, see Mass. R. Crim. P. 16 (a), 378 Mass. 885 (1979)"
(quotation omitted). Commonwealth v. Boyd, 474 Mass. 99, 103
(2016). "[T]he decision to nol pros a criminal case is within
the discretion of the executive branch of government, free from
judicial intervention." Commonwealth v. Gordon, 410 Mass. 498,
500 (1991). When entering a nolle prosequi, a prosecutor must
provide an explanation for the entry. Commonwealth v. Denehy,
466 Mass. 723, 734 n.15 (2014). It did so here. "For all that
appears, the decision to proceed by indictment was a proper
exercise of the prosecutor's discretion and was made
independently of any desire to intrude on the prerogatives of
the [BMC] judge." Commonwealth v. Hinterleitner, 391 Mass. 679,
682-683 (1984). Contrast Commonwealth v. Benton, 356 Mass. 447,
448 (1969) (after prosecutor entered nolle prosequi as part of
plea agreement, subsequent indictment for identical offenses
improper).

We discern no prejudicial error or abuse of discretion in
the motion judge's denial of both motions to dismiss.

2. Lack of Guardado I instruction. The defendant also
argues that a substantial risk of a miscarriage of justice arose
when, at trial in 2021, the judge did not instruct the jury that
the Commonwealth had to prove that the defendant lacked a valid
firearms license, as required by Guardado I, 491 Mass. at 690.
The Commonwealth concedes error but argues that the error was

12

harmless beyond a reasonable doubt.  See Commonwealth v. Souza, 492 Mass. 615, 638 (2023).

The indictments for unlawful possession of firearms and for carrying a loaded firearm each alleged that the defendant did not "hav[e] in effect a license to carry firearms."  During trial, a police officer testified without objection that neither the defendant nor the other four occupants of the Nissan were licensed to carry firearms.[12]

During his jury instructions, the trial judge referred to the firearms offenses as "possession of a firearm without a valid license to carry firearms and possession of a loaded firearm without a valid license to carry firearms."  The defendant did not object to the instructions or ask the trial judge to explain the licensing statutes, G. L. c. 140, §§ 131 & 131F, which were cited in the two indictments for unlawful possession of a firearm.  As recited in open court, the jury's verdicts on those two indictments specified that the defendant had "no license."

---

[12] In addition, the transcript documents that the police bodycam video footage played for the jury recorded an officer asking if someone had a license to carry firearms.  That bodycam video footage was admitted in evidence, but is not in the appellate record, and so we cannot ascertain if those questions were directed to the defendant or if he responded.

13

In those circumstances, assuming that after Guardado I, 491 Mass. at 686, the defendant was entitled to a more fulsome instruction on the Commonwealth's burden to prove that he did not have a firearms license, the absence of such an instruction was harmless beyond a reasonable doubt. See Commonwealth v. Bookman, 492 Mass. 396, 401 (2023).

3. Duplicative convictions. The Commonwealth and the defendant agree that the defendant's convictions for carrying a loaded firearm, G. L. c. 269, § 10 (n), and unlawful possession of ammunition, G. L. c. 269, § 10 (h), both pertaining to the Ruger, are duplicative.

Conclusion. The conviction of unlawful possession of ammunition without an FID card (count five, docket number 1783CR00226) is reversed, the verdict is set aside, and judgment on that count only shall enter for the defendant. All other judgments on both dockets are affirmed.

So ordered.

By the Court (Rubin, Grant & Hershfang, JJ.[13]),

Clerk

Entered: September 9, 2024.

---

[13] The panelists are listed in order of seniority.

14